(Reap. Dec. 8264)

UNITED STATES *v.* C. R. SPRINGMAN

Entry No. 42–B, etc.

(Decided November 25, 1953)

*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil* and *Daniel I. Auster*, special attorneys), for the plaintiff.

Defendant not represented by counsel.

LAWRENCE, Judge: The case before the court involves a collector's appeal for a reappraisement of merchandise consisting of picture frames and pictures made of wood, imported from Mexico, and is limited to the articles which will be referred to as "singles" and "doubles." The word "singles" refers to a sculptured portrait of one person contained in a frame, and the word "doubles" indicates an article consisting of sculptured portraits of two persons in one frame. Other items covered by the entries accompanying this appeal, which are described as "triples" and "quadruplets," are not in issue. Covered by this appeal are 53 importations, the dates of exportation from Mexico extending over a period of slightly more than 2 years.

The controverted articles were entered and appraised on the basis of 22.50 pesos Mexican currency each for the "singles" and 40 pesos Mexican currency each for the "doubles," plus tax as entered. The record does not disclose, nor have counsel for the parties indicated, whether appraisement was made on the basis of foreign or export value, as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c) and (d)), as modified by the Customs Administrative Act of 1938. It may be inferred from what was adduced at the hearing of this appeal that the values of the controverted articles would be the same whether predicated upon the basis of foreign or export value.

It is the contention of the Government-plaintiff that the singles should have been appraised at 35 pesos each and the doubles at 55 pesos each, on the basis of foreign value (section 402 (c) of the tariff act, as amended, *supra*).

The evidence presented in support of plaintiff's claim consists of a Treasury representative's report, identified as plaintiff's exhibit 1, and the incorporation of the record in the case of *Frank P. Dow Co., Inc., of Los Angeles* v. *United States*, 22 Cust. Ct. 361, Reap. Dec. 7645, which was modified on appeal in 25 Cust. Ct. 463, Reap. Dec. 7915.

Inasmuch as the presence of the importer-defendant could not reasonably be had when the case was scheduled for hearing, a sworn affidavit submitted by him to the court was received in evidence as defendant's exhibit A.

A review of the incorporated case proves of little value in the determination of the appeal for a reappraisement presently before the court. When its offer in evidence was made by the Government, counsel stated that he did not know whether the pictures involved in that case were of the same quality as those at bar but believed it applied only to "special quality" pictures and frames rather than the "regular or standard quality" items involved herein. Despite the court's instruction to counsel at the hearing to demonstrate in a brief or memorandum

those parts of the incorporated case which would be material and relevant to the issue here presented, the court has not been so advised.

With reference to the Treasury representative's report in evidence as plaintiff's exhibit 1, it is noted that said report relates to only a portion of the period over which the merchandise here in controversy was exported. While said exhibit states that—"There have been no price changes during the period covered by this report," no evidence has been offered here to indicate whether or not the market remained stable for the balance of the period not covered by the report.

The following information is disclosed by plaintiff's exhibit 1:

These portraits are made of a photograph posted on a contoured, carved and painted wooden background to give a third dimensional aspect. They come in an elaborate carved wooden frame. Usually, there is only one factor which affects the price, that is, whether the portrait is of one person, or two, or more. Exceptionally, a higher price may be charged, if the purchaser asks for the painting and retouching of the features to be done by a better artist than Cruz [supplier] usually employs. With the exception just pointed out, these portraits are always of the same quality as regards portrait, wooden background, and wooden frame.

It appears also that—

* * * such merchandise was and is freely offered to all purchasers for exportation to the United States without restriction as to resale or use at the same price at the same time. * * * Most of his [Cruz's] business in Mexico is with consumers who want portraits of themselves. Besides this business with consumers, who usually buy one portrait at a time, and who pay 35 pesos for a single figure portrait, and 55 pesos for a double figure portrait, Cruz sells at wholesale to other photographers or dealers who buy not for their own use but to resell. He freely offers and sells to all American purchasers who buy to resell, and all pay the same price. No difference is made in the selling price on account of the size of the purchase.

Sales are made, F. O. B. Mexico City, packing and cartage included in the unit price, document stamps and consular invoice fee charged extra. All other expenses are attended to by the importer.

The report also discloses that—

This manufacturer puts out no catalogue or price-list. He has set prices for his wholesale customers, which are strictly adhered to, unless there happens to be an exceptional difference in the quality. These prices are:

Single figure portrait with frame_____ 22.50 Pesos
Double figure portrait with frame_____ 40.00 ”

* * * * * * *

The only times when the portraits in one, two, or three figures were sold at other prices than those indicated above, was when the buyer asked for extra special painting and retouching by a special artist. In these cases, the singles were priced at 35.00 pesos and the doubles at 55 pesos.

It appears further that the prices do not depend upon the quantity purchased and that the market for this merchandise is Mexico City, D. F.

On the point of foreign value, the report states that—

Such or similar merchandise is freely offered for sale to all purchasers for consumption in Mexico. Prices and conditions are the same as described above under Export Value.

Attached to the report was a statement and listing of sales covering the period from April 1944 to June 1945 disclosing that records were kept only of wholesale sales and that no records were made or kept of the retail sales of one or two portraits at a time to consumers. The listing shows sales "made to different buyers located along or near the Mexican border, either on the Mexican side or on the American side," and for sales of regular or standard quality, pictures or picture frames were consistently made at the set prices of 22.50 pesos for the singles and 40 pesos for the doubles.

Rather than negating the values found by the appraiser, plaintiff's exhibit 1 would appear to corroborate said values, as reflected by the listing of sales in the ordinary course of trade for home consumption and for export, which listing is attached to said exhibit, and are equal to the invoiced, entered, and appraised unit values of the merchandise in issue.

Furthermore, the statement in plaintiff's brief that "in view of the fact that the major portion of sales, if not practically all sales in Mexico, are to consumers, the price to such consumers represents the dutiable value of the involved merchandise" is a conclusion wholly unsupported by evidence of record. In fact, no evidence of such sales forms part of the record before the court. On this point, the following is quoted from plaintiff's exhibit 1:

Cruz' sales records were in the form of loose copies of invoices, the authenticity of which was attested to by government stamps.

These records covered only the wholesale sales. *No records were made or kept of the retail sales of one or two portraits at a time to consumers.* [Italics supplied.]

On the record before the court, it is apparent that the plaintiff has failed to meet the burden placed upon it by statute. Section 2633 of title 28, United States Code, provides:

*   *   *   *   *   *   *

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

With reference to the sworn affidavit of defendant, in evidence as exhibit A, the following is quoted from the brief of plaintiff:

Exhibit A is the affidavit by C. R. Springman, the defendant in this action. Government counsel objected to its receipt in evidence upon the grounds of materiality, relevancy, competency, and remoteness, and reserved the right to make other specific objections in its brief. We state herein that the affidavit is inadmissible for the further reasons that the affiant is the defendant, who states

that he resides at Brownsville, Texas. This case was heard and submitted at Brownsville, Texas. He, therefore, could have requested a continuance of the case to enable him to come back from his journey, which took place on or about the time of the docket hearing, on June 17, 1952. The receipt of the affidavit precludes the Government from cross-examining a party to the action upon evidence which the said party seeks to offer by means of this affidavit. Some of the allegations relate to conversations with others, which would, further, make the affidavit inadmissible. It also contains conclusions as to facts and in no way establishes that a foreign value did not exist for this merchandise.

One of the rarities in the law of evidence and applicable in customs jurisprudence only to valuation proceedings is the statutory exception to the hearsay rule contained in that part of section 2633 of title 28, United States Code, which reads:

In finding the value of merchandise, in reappraisement proceedings before a single judge of the Customs Court, affidavits and depositions of persons whose attendance cannot reasonably be had, price lists and catalogues, reports or depositions of consuls, customs agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be admitted in evidence. * * *

The court, being convinced that the appearance of affiant Springman could not reasonably be had when the case was called for hearing, and the statute not requiring him for that reason to seek a continuance of the litigation, the affidavit identified as defendant's exhibit A is clearly admissible as evidence and is deserving of being accorded such weight as the court deems it warrants.

Inasmuch as plaintiff herein has failed to make out a *prima facie* case, the court is not here confronted with the balancing of the weight of evidence presented by the opposing parties. Therefore, although recognizing the validity of defendant's affidavit as evidence, it is not necessary here to consider its merits.

The presumption of correctness attaching to the appraiser's action not having been overcome, the court finds and holds that the values found by the appraiser are the proper values of the merchandise covered by this appeal for a reappraisement.

Judgment will be entered accordingly.